961 So.2d 458 (2007)
R.G. CLAITOR'S REALTY
v.
Bill RIGELL and GJR, Inc. D/B/A Eagle Travel Consultants.
No. 2006 CA 2336.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*459 Richard A. Aguilar, Edward L. Fenasci, Jean-Paul Perrault, Ingrid M. Kemp, New Orleans, Counsel for Plaintiff/1st Appellee/2nd Appellant R.G. Claitor's Realty.
Thomas. M. Lockwood, Baton Rouge, Counsel for Defendant GJR, Inc.
A. Gregory Rome, Baton Rouge, Counsel for Defendant/1st Appellant/2nd Appellee Bill Rigell.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
In this action on a lease, defendant, Bill Rigell (Rigell), appeals the trial court's judgment awarding plaintiff, R.G. Claitor's Realty (Claitor Realty), $12,428.55 in attorney fees and $2,772.72 in costs and expenses, plus interest. Additionally, Claitor Realty appeals the trial court's judgment, seeking an increase in the amount of attorney fees and requesting additional attorney fees for work performed on appeal. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On November 30, 1994, Rigell, for GJR, Ltd. as lessee, and Jon F. Claitor, for Claitor Realty as lessor, executed a lease agreement regarding office space located on Acadian Thruway in Baton Rouge, Louisiana. Thereafter, on June 12, 1998, Claitor Realty filed suit on the lease, naming Rigell and GJR, Inc. d/b/a Eagle Travel Consultants (GJR)[1] as defendants. In its *460 suit, Claitor Realty alleged GJR breached the lease agreement by vacating the premises prior to the expiration of the lease term and accordingly owed Claitor Realty for unpaid rent, common area maintenance charges, late fees, and attorney fees. Claitor Realty also asserted that Rigell was personally liable for the amount owed because at the time of the execution of the lease agreement, GJR was not incorporated. Rigell and GJR answered the petition, with GJR asserting a reconventional demand and claiming that Claitor Realty breached the lease agreement by disturbing GJR's peaceful possession of the lease premises.
On January 16, 2003, Rigell filed a motion for summary judgment, asserting that he was not personally liable for the lease obligation of GJR because only GJR bound itself as lessee, and the parties had agreed to waive any requirement for a personal guarantee on the lease. The trial court subsequently denied Rigell's motion. Thereafter, on December 8, 2005, Claitor Realty filed a motion for partial summary judgment, asserting that there was no genuine issue of material fact in dispute that GJR breached the lease agreement and Rigell was personally liable under the lease. Accordingly, Claitor Realty requested that the court adjudge Rigell liable for $46,900.00 in unpaid rent and common area maintenance charges, $2,814.00 in late charges, attorney fees, and interest. Claitor Realty also sought dismissal of GJR's reconventional demand, asserting that there was no evidence to support the facts that GJR alleged underlie its claim.
A hearing on the motion for partial summary judgment was set for March 20, 2006. On March 16, 2006, Rigell's attorney filed a motion to continue the hearing, asserting that he had been unable to prepare an opposition to the motion for partial summary judgment because of unanticipated absences of support staff in his firm. By the March 20, 2006 hearing, neither Rigell nor GJR had filed an opposition. The trial court denied Rigell's request for a continuance and, in a judgment dated April 24, 2006, granted Claitor Realty's motion for partial summary judgment, dismissing GJR's reconventional demand with prejudice and entering judgment against Rigell in the principal amount of $49,714.20, together with judicial interest, and attorney fees and costs to be fixed upon subsequent motion by Claitor Realty. Thereafter, Rigell filed a motion for suspensive appeal of the April 24, 2006 judgment.[2]
On May 19, 2006, Claitor Realty filed a motion to establish the amount of attorney fees, costs, and expenses due and to designate the judgment as final. Following a hearing, the trial court signed a judgment on September 14, 2006, in favor of Claitor Realty and against Rigell, awarding Claitor Realty $12,428.55 in attorney fees, plus $2,772.72 in costs and expenses, and ordering that this judgment, and the judgment dated April 24, 2006, be declared final, appealable judgments as contemplated by La. C.C.P. art. 1915 and that there was no just reason for delay of the appeal of these judgments. On October 13, 2006, Rigell filed a motion and order for suspensive appeal of the September 14, 2006 judgment.[3] Additionally, Claitor Realty filed a *461 motion and order for devolutive appeal of the September 14, 2006 judgment, requesting an increase in the attorney fees award and also requesting additional attorney fees for work performed on appeal.
Thereafter, Claitor Realty filed a motion to dismiss Rigell's appeal of the September 14, 2006 judgment for his failure to post the required suspensive appeal bond, and also filed, out of an abundance of caution, an answer to Rigell's appeal requesting additional attorney fees for work performed on appeal. This court, on December 19, 2006, issued a rule to show cause ex propio motu as to why the answer filed by Claitor Realty should not be dismissed pursuant to La. C.C.P. art. 2133. Claitor Realty's motion to dismiss and this court's show cause order were referred to the merits of this appeal.

DISCUSSION
Rigell's Appeal
As stated above, Claitor Realty filed a motion to dismiss Rigell's suspensive appeal from the September 14, 2006 judgment for failure to post the required suspensive appeal bond. In a suspensive appeal, the appellant must file a petition for appeal and furnish the security within the delay allowed in La. C.C.P. art. 2123. Wright v. Jefferson Roofing, Inc., 93-1217 (La.1/14/94), 630 So.2d 773, 775. When the appellant fails to timely furnish the security required for a suspensive appeal, the right vests in the appellee to obtain dismissal of the suspensive appeal and to secure the right to execute on the judgment. Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 5 (La.App. 1st Cir.6/20/97), 706 So.2d 999, 1002, writ denied, 97-2192 (La.11/21/97), 703 So.2d 1311. However, the suspensive appeal is not invalid merely because the appellant does not timely furnish security. Rather, this failure merely constitutes an irregularity or defect imputable to the appellant, which may form a basis for the appellee to move for dismissal of the suspensive appeal under La. C.C.P. art. 2161. See Blue, Williams & Buckley, 96-1451 at p. 5, 706 So.2d at 1002.
Since the elimination of the requirement of a bond for devolutive appeals, the courts have consistently held that this defect is not jurisdictional. Thus, where the appellant has failed to file the required bond, the suspensive appeal should be converted to a devolutive appeal, as long as the appellant has met those requirements. Clement v. Graves, 04-1831, p. 6 (La.App. 1st Cir.9/28/05), 924 So.2d 196, 200.
In the instant case, the judgment at issue was signed on September 14, 2006. Rigell filed his motion for suspensive appeal on October 13, 2006, which the trial court granted on October 16, 2006. At the time this case was submitted for decision on appeal, the records in the trial court indicated that Rigell had not posted the required security with regard to this suspensive appeal.[4] Accordingly, while Rigell has not filed the security necessary to maintain his suspensive appeal, he has met the requirements for a devolutive appeal. Therefore, Claitor Realty's motion to dismiss is granted insofar as it seeks to dismiss Rigell's suspensive appeal; however, Rigell's appeal is maintained as a devolutive *462 appeal. See Clement, 04-1831 at p. 9, 924 So.2d at 202.
On appeal, Rigell asserts that the trial court erred in adjudging him personally liable for the attorney fees, costs, and expenses owed to Claitor Realty. However, the issue of personal liability was determined in the April 24, 2006 judgment, which this court reviewed in a separate opinion, R.G. Claitor's Realty v. Rigell, XXXX-XXXX (La.App. 1st Cir.5/4/07), 961 So.2d 469, 2007 WL 1300239, and found no error in the trial court's determination that Rigell was personally liable for the obligations under the lease. Additionally, the September 14, 2006 judgment only addressed the amount of attorney fees, costs, and expenses owed to Claitor Realty. Therefore, to the extent that this court has already upheld the trial court's determination regarding personal liability, and Rigell does not raise any additional argument with respect to the trial court's September 14, 2006 judgment awarding Claitor Realty attorney fees, costs, and expenses, we find Rigell's assignment of error to be without merit.
Further, pursuant to the rule to show cause issued by this court, we dismiss Claitor Realty's answer to the appeal. When an appellee appeals from the trial court's judgment or answers an appeal, he preserves his right to seek additional attorney fees for work performed on appeal. See La. C.C.P. art. 2133; Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 18 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 25; Williams v. Louisiana Indemnity Co., 26,887, p. 6 (La.App. 2nd Cir.6/21/95), 658 So.2d 739, 743. Because Claitor Realty separately appealed from the trial court's judgment and requested additional attorney fees for work performed on appeal, it did not need to answer the appeal to preserve such a claim. Accordingly, Claitor Realty's answer to Rigell's appeal is dismissed.
Claitor Realty's Appeal
In its appeal from the trial court's judgment, Claitor Realty asserts that the trial court erred in failing to include interest in the calculation of attorney fees on the main demand and also erred in failing to award attorney fees for defending against GJR's reconventional demand. Additionally, Claitor Realty seeks attorney fees for work performed on appeal.
The lease agreement at issue specifically authorizes the payment of attorney fees. A paragraph entitled "Attorney Fee" states:
Should an attorney be engaged by Lessor to enforce payment of the rent due under this lease or to protect any of the interest of the Lessor hereunder, with or without judicial proceedings, Lessee agrees to pay Lessor the reasonable fee of such attorney, which fee is hereby fixed, if the collection of money is involved, at 25% of the amount of such money, such fee in no event to be less than $500.00 and Lessee also agrees to pay all court costs and other expenses incurred by Lessor. Lessee shall pay Lessor's reasonable attorney's fee incurred in connection with Lessee's request for Lessor's consent to assign, sublet or in connection with any other act which Lessee proposes to do and which require Lessor's consent.
The trial court awarded Claitor Realty $12,428.55 in attorney fees, which represents twenty-five percent of $49,714.20, the principal amount awarded. Claitor Realty, however, asserts that the calculation of attorney fees should have also included interest.
The plain language of the attorney fee provision, as outlined above, clearly does not mention interest. Rather, it simply *463 states that if the collection of money is involved, the attorney fee shall be fixed at twenty-five percent of the amount of "such money." Based on the language of this provision, we conclude that "such money" in the instant case includes the amounts Claitor Realty claimed for unpaid rent, common area maintenance charges, and late fees, which represents the principal amount awarded of $49,714.20.
Such an interpretation of the lease agreement is supported by this court's opinion in Claitor v. Delahoussaye, 02-1632, pp. 14-15 (La.App. 1st Cir.5/28/03), 858 So.2d 469, 480, writ denied, 03-1820 (La.10/17/03), 855 So.2d 764, wherein we interpreted the same attorney fee provision at issue in the instant case and determined that "the clear and unambiguous language of the lease agreement fixes the [attorney fees at twenty-five percent] of the amount of money awarded to plaintiff." In Claitor, this court went on to limit the award for attorney fees to twenty-five percent of the total amount awarded for rent and damages, which was exclusive of interest. Claitor, 02-1632 at pp. 3 and 15, 858 So.2d at 473 and 481. Accordingly, we find that based on the unambiguous language of the attorney fee provision, the trial court was correct in limiting the award of attorney fees to twenty-five percent of the principal amount awarded, exclusive of interest. See also SBS-South College Medical Center v. Trahan, 505 So.2d 969, 972 (La.App. 3rd Cir.), writ denied, 508 So.2d 827 (La.1987).
Claitor Realty also asserts that the attorney fee provision provides for recovery of additional attorney fees it incurred in defending against GJR's reconventional demand. In support of this argument, Claitor Realty directs this court's attention to the portions of the attorney fee provision providing for an award of a reasonable attorney fee in the event the lessor has to engage an attorney to "protect any of [its] interest." According to Claitor Realty, this provision provides for an additional basis for recovery of attorney fees when it has to engage an attorney to protect its interests other than the collection of money. Therefore, because Claitor Realty incurred attorney fees in defending the reconventional demand to protect its interest under the lease, it contends it is entitled to a reasonable fee in addition to the twenty-five percent already awarded on the main demand.
In raising this argument, Claitor Realty does not particularize what interest it was protecting. Presumably, because the reconventional demand alleged that Claitor Realty disturbed GJR's peaceful possession of the lease premises and accordingly, breached the lease agreement, it was protecting its interest in showing that it did not breach the agreement and, therefore, was entitled to the unpaid rent, common area maintenance charges, and late fees that it claimed. Therefore, the ultimate interest it sought to protect was the same interest for which it already received attorney fees  the collection of money. Accordingly, we find no error in the trial court's determination that under the facts of this case, the attorney fee provision of the lease agreement does not provide for additional attorney fees for Claitor Realty's defense of the reconventional demand.
Alternatively, Claitor Realty asserts it is entitled to additional attorney fees for defense of GJR's reconventional demand under the indemnity provision of the lease agreement. The indemnity provision provides, in part:
Lessee shall indemnify and hold harmless Lessor from and against any and all claims arising from Lessee's use of the premises, or from the conduct of Lessee's business or from any activity, work, or things done, permitted or suffered *464 by Lessee in or about the premises or elsewhere and shall further indemnify and hold harmless Lessor from and against any and all claims arising from any breach or default in the performance of any obligation on Lessee's part to be performed under the terms of this lease, or arising from any negligence of the Lessee, or any of Lessee's agents, contractors, or employees and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any sub-Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel satisfactory to Lessor.
While this provision does indicate that the lessee is to indemnify the lessor under certain circumstances, we agree with the trial court that it is a stretch to extend this indemnity to a situation where, as alleged here, the lessor interfered with the lessee's peaceful possession of the lease premises. Such an interpretation would render lessee's enforcement rights under the lease agreement meaningless, as it would then be required to indemnify lessor for exercising those rights. See La. C.C. arts.2050 and 2053.[5] Accordingly, we find no error in the trial court's determination that under the facts of this case, the indemnity provision does not provide for attorney fees for Claitor Realty's defense of the reconventional demand.
Finally, we address Claitor Realty's request for additional attorney fees for work performed on appeal. As stated above, Claitor Realty sought review in this court primarily of the September 14, 2006 judgment, requesting an increase in the amount of attorney fees awarded for work performed in the trial court. However, because we have determined that the trial court did not err in its award of attorney fees, we decline to award Claitor Realty any additional attorney fees for work performed on this appeal.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. Additionally, Rigell's suspensive appeal is dismissed, but it is converted to a devolutive appeal. Further, pursuant to this court's rule to show cause, Claitor Realty's answer to the appeal is dismissed. All costs of this appeal are to be borne by Bill Rigell.
MOTION TO DISMISS SUSPENSIVE APPEAL GRANTED BUT DEVOLUTIVE APPEAL MAINTAINED; ANSWER TO APPEAL DISMISSED; JUDGMENT AFFIRMED.
NOTES
[1] GJR, Ltd., as referenced in the lease agreement, was never formed; rather, GJR, Inc. was incorporated on February 3, 1995.
[2] This appeal is the subject of R.G. Claitor's Reality v. Rigell, XXXX-XXXX (La.App. 1st Cir.5/4/07), 961 So.2d 469, 2007 WL 1300239, also decided this date. The motion for appeal states that "defendants" request an appeal from the April 24, 2006 judgment; however, only Rigell appears as an appellant before this court.
[3] Again, the motion for appeal states that "defendants" request an appeal from the September 14, 2006 judgment; however, Rigell is the only defendant appearing as an appellant before this court.
[4] As indicated previously, Rigell also suspensively appealed from the trial court's April 24, 2006 judgment, which is the subject of a separate opinion. Rigell posted the required security for that appeal, and accordingly, Claitor Realty does not seek dismissal of that suspensive appeal.
[5] Louisiana Civil Code article 2050 provides:

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
Louisiana Civil Code article 2053 provides:
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of like nature between the same parties.